RILEY et al. v. JACKSON.

(Circuit Court of Appeals, Ninth Circuit. May 8, 1893.)

No. 76.

PATENTS FOR INVENTIONS—VALIDITY—NOVELTY—EVIDENCE.

Claims 4 and 5 of letters patent No. 263,412, issued August 29, 1882, to Peter H. Jackson, were as follows: "The improvement in illuminating tiles, consisting of metallic sections with horizontal shoulders, upon which the edges of the adjacent tiles are supported, where said shoulders extend the full length of the tiles, so as to rest upon the bearing surfaces;" and "the improvement in basement extensions, consisting of the supporting beams and wall having depressions at intervals, in combination with the horizontal tile-supporting shoulders, resting in the depressions, and forming the bottoms of the joints between the meeting edges of the adjacent tiles." *Held*, that the device covered by the latter claim is merely an equivalent for the stone coping formerly used for the purpose; and in view of uncontradicted expert evidence that bearers, supporting shoulders, etc., equivalent to those described in the patent, had long been in use, these claims are invalid for want of patentable novelty.

Appeal from the Circuit Court of the United States for the Northern District of California.

In Equity. This was a suit by Peter H. Jackson against George D. Nagle, John F. Riley, and Frank M. Loane for alleged infringement of certain patents issued to complainant. There was a decree for complainant in the court below, and defendants appeal. Reversed.

Geo. M. Spencer, and Franklin P. Bull, for appellants.

John L. Boone, for appellee.

Before McKENNA and GILBERT, Circuit Judges, and HANFORD, District Judge.

HANFORD, District Judge. This is a suit in equity, brought by Peter H. Jackson in the United States circuit court for the northern district of California, against George D. Nagle, John F. Riley, and Frank M. Loane, for alleged infringements of certain patents. The bill of complaint sets forth the rights claimed, charges infringement thereof by the defendants, and prays for an injunction and for an accounting. The circuit court first made an interlocutory decree affirming the validity of the patents sued on, adjudging that the same had been infringed by the defendants, referring the case to a master to take, state, and report an account of the gains, profits, and advantages obtained by the respondents, and the damages resulting to the complainant by or through the acts of the respondents in violation of the rights of the complainant under said patents, and perpetually enjoining the defendants from making, using, and selling any improvements in the construction of buildings or sidewalks, or other structures containing the invention claimed, covered and protected in and by the first, fourth, and fifth claims of letters patent No. 263,412, the first and second claims of letters patent No. 269,863, and claims 2 and 3 of letters patent No. 302,338, in any manner whatever. Afterwards, upon the coming in of the master's report, the court made a final decree in favor

of the complainant, and against Riley & Loane, for the sum of $365.25, damages and costs. Thereupon said Riley & Loane brought the case to this court by an appeal.

The several patents sued on are described as follows: No. 263,412, entitled "Improvements in the Method of Illuminating Basements," issued to the complainant August 29, 1882; No. 269,863, entitled "Iron and Illuminating Stairs," issued to the complainant January 2, 1883; No. 302,338, entitled "Improvements in the Construction of Buildings," issued to the complainant July 22, 1884. The controversy as to the validity of patents Nos. 269,863 and 302,338 has been eliminated by express admissions made in behalf of the appellants. And in making his argument upon the hearing of the case in this court the attorney for the appellee explained a model brought into the case as an exhibit for the purpose of illustrating the work of the defendants supposed to infringe the patents; and in doing so he was obliged to admit that the defendants' construction does not contain all the elements necessary to make the combination covered by claim 1 of patent No. 263,412. Therefore, the case, as it was submitted in this court, involves only questions as to the validity of the last-mentioned patent in respect to claims 4 and 5 thereof, and as to the amount of damages, if any, which the appellee should recover. The general description of the invention protected by said patent No. 263,412 contained in the specifications is as follows:

"My invention relates to certain improvements in the illuminating of basements by means of glazed tiles, and the method of fixing and supporting the framework in which they are set, so that tighter joints may be made, the danger of warping the castings overcome, and a stronger, neater, and cheaper finish provided, as will be more fully explained by reference to the accompanying drawing. * * * These tiles are cast in sections of a shape and size convenient for handling, and have strengthening ribs beneath. At the edges, where these sections meet, one is provided with an extension projecting so that the next section will be supported upon it. As ordinarily constructed, the ribs, and also the shoulder or extension, stop just inside the beam or bearer on the inside, and the wall on the outside, and pieces of sheet metal must be laid beneath the meeting edges of the sections beyond the point where the shoulders or extensions cease to close the bottom joint. As these sections are of considerable weight, and must be moved to bring the bolt holes to correspond, the sheet-metal pieces are apt to become displaced, and make leaks. In my device the tiles are formed so that every alternate one has a strengthening rib, C, upon each side, and shoulders, D, also, project from the lower edge on each side, so that the adjacent tiles will be supported by them. These shoulders are extended to the full length of the tile, and project upon the beam or bearer, and also upon the wall as far as the tile itself does. This insures a perfect joint and support for the entire length of the tile, and all loose pieces of metal are dispensed with. The tiles being laid and leveled, the joint below is stopped with putty, and a strip of wood is laid along each side of the line of tiles where the sidewalk is to meet them, the strip having an inclined side next the edge of the tiles, so that there will be a triangular or prism-shaped space left between the inner face of the wooden strip and the edge of the tile. Molding sand may be filled in around the outside of the strip to prevent the filling cement from running out. The cement, which is formed principally of brimstone, is then run into the space around the tiles, and between it and the wooden strip, filling all the space in front of and around the tile, also below it, so as to fill all cracks and inequalities caused by interstices in the brickwork, or by the casings being warped. This cement sets at once, and forms a tight,

*solid bed for the tiles in a few minutes, after which the sand, wooden strips, and putty may be removed.* The sidewalk, which may be made of asphalt, concrete or artificial stone, or other common or suitable material, when laid, will fit closely against the cement border, E, which has already been run around the tile, and will be level with the tiles, so that the whole forms a uniform surface. By thus forming a cement border, I dispense with the expensive stone coping, which must ordinarily be laid to receive the tiles, and the joint which must be made between the tiles and the coping, as well as another joint outside the coping itself, all of which are very troublesome to make and keep tight. When laid in Portland cement, in the usual manner of laying tiles, the cement is a long time in setting, and, if the tiles are stepped upon or tilted in any way, the cement will be pressed out, and thus leave a leak around them. The ribs, being formed upon both sides of one tile, may be made quite deep without danger of warping or straining the tile in cooling. In some cases it may be found preferable to make the shoulders and ribs separate from the tiles, and lay them in depressions, A, formed in the wall, and in the bearing bar at the inside, as shown in Figs. 3 and 4. The tiles are then laid upon them and bolted down, after which the cement joint is made, as before described. Various forms may be adapted for the edges of the tiles, so as to form a deeper vertical joint for the cement, as shown in Figs. 3 and 4. I am aware of the patent issued to William Dale, January 14th, 1879, No. 211,297, and specifically disclaim anything shown therein."

## The fourth and fifth claims of the patent are as follows:

"(4) The improvement in illuminating tiles, consisting of the cast metallic sections, with horizontal shoulders, D. upon which the edges of the adjacent tiles are supported where said shoulders extend the full length of the tiles, so as to rest upon the bearing surfaces, substantially as and for the purpose herein described.

"(5) The improvement in basement extensions, consisting of the supporting beams and wall, having depressions, A, at intervals, as shown, in combination with the horizontal tile-supporting shoulders, D, resting in the depressions, and forming the bottoms of the joints between the meeting edges of adjacent tiles, substantially as herein described."

The evidence shows that the appellants have constructed illuminating tiles, and placed the same in sidewalks, using for supporting beams or ribs T iron, such as hardware dealers keep in stock, cut into proper lengths to extend across the space to be tiled, and from edge to edge of the tile sections, the outer ends resting upon the top of a supporting wall of brick or stone, the space on the top of the wall between the ends of the T-iron beams being filled with cement, and the tile sections being laid upon and bolted to said beams; the completed structures being substantially the same as if built according to the above specifications of the appellee's alleged invention, and having all the elements of the fourth and fifth claims.

The validity of the patent as to said claims is disputed on the ground that the invention was anticipated. The amended answer gives notice, with sufficient particularity and definiteness, as we think, of the times, places, and persons when, where, and by whom devices for the same purposes, and identical in character, have been used prior to the date of said patent; and, to sustain the allegations of this paragraph of the answer, depositions were taken in New York of John W. Mark and Charles E. Furman. Mr. Mark testified as follows:

"Third interrogatory: State the character and extent of your knowledge regarding the combination and use of tile and vault lights in the construction of buildings and sidewalks."

"(3) To the third interrogatory he saith: 'My experience regarding the combination and use of tile and vault lights in the construction of buildings and sidewalks is based upon the fact that I have, for the past eighteen years, been continually in that business, and for the last ten years have been superintendent in laying down tiles and vault lights. I feel that I am thoroughly familiar with all the various details of the tile and vault light business.'"

"Fourth interrogatory: State whether you have any knowledge concerning the construction and use of bearers, with strengthening ribs on the under side, for supporting the frames of vault lights and illuminating sidewalks or tiling, and extending the full length of the tile frame, and resting upon the brickwork coping or iron frames for their support, and, if so, for how long a time they have been in use."

"(4) To the fourth interrogatory he saith: 'Yes; I am. They have been in use, to my knowledge, during the entire extent of time I have been in the business.'"

"(5) To the fifth interrogatory he saith: 'Said bearers were used in the construction of vault lights in the Van Ingen building, northeast corner of Broadway and Broome streets, New York city, done by J. W. & W. W. Cornell in 1860, and were also used in connection with the following other buildings: Buildings at Nos. 791 and 793 Broadway, done by Dale Tile Company, in 1878; Daniel & Son's dry-goods store, corner of 9th street and Broadway, done by A. J. Campbell & Co., in the year 1878; Hotel Marlborough, southwest corner 37th street and Broadway, New York city, done by Ayres & McCandles in the year 1874; and a number of others.'"

"(13) To the thirteenth interrogatory he saith: 'I have had eighteen years' experience, and from my knowledge of the art down to April 4th, 1892, I do not discover anything in Jackson's bearer that any skillful mechanic, exercising ordinary skill in his trade, could not supply without exercising his inventive faculties. It was, perhaps, the most primitive mode of construction.'"

## Mr. Furman's testimony is as follows:

"(4) To the fourth interrogatory he saith: 'I have had experience in the manufacture and construction of vault lights, skylights, and illuminating sidewalks, where they were constructed by bolting or fastening illuminating tiles to independent bearers, said bearers extending the entire length of the tiles, one end of the beams being fastened to headers at the building, the other end resting on area wall or coping. I have superintended the manufacture or construction of such vault lights and area coverings since the year 1877.'"

"(5) To the fifth interrogatory he saith: 'We, the Dale Tile Manufacturing Company, of the city of New York, manufactured and constructed vault lights and illuminating sidewalks, as above described, as early as the year 1887, in which year they made and constructed for the area for building at the northeast corner of Fifth avenue and 42nd street a vault light, constructed of illuminating tiles bolted and fastened to wrought-iron I beams, one end of which was coped into a header of another I beam, the other end being implanted in the area wall, the beams and tiles being of the same length. In some portions of this work the bearers at both ends were inserted, one end in brick wall at building, the other at brick area wall. William H. Webb is the owner of this property. The following other buildings were also furnished with sidewalks made of the independent bearers, to which were bolted illuminating tiles: Building 791 and 793 Broadway, New York, owner, Lorillard Estate, the bearer being fastened one end to iron header at house line, and other inserted into coping stone. To these were fastened illuminating tiles extending the entire length of the bearers. This work was done by the Dale Tile Manufacturing Company in 1879. Building No. 124 Fifth avenue, area light constructed of bearers and illuminating tiles, the bearers being detached to which the tiles were bolted; one end of beam coping into header at building; the other rested on area wall. This was constructed by the Dale Tile Manufacturing Company, Limited, in 1878, for J. W. Burnham.'"

"(13) To the thirteenth interrogatory he saith: 'I have had fourteen years' experience with inventions relating thereto, and cannot discover, now, anything new or novel in Jackson's bearer, or anything that any ingenious mechanic could not furnish. In fact, the earliest method of furnishing vault lights was such as Jackson claims in his patent.'"

In the opinion of the learned judge who tried the case in the circuit court, this evidence is disposed of by saying that, "the testimony of Mark and Furman is principally confined to the existence and use of a tile bearer, without any special reference to the combination in which it is used by the complainant." We are unable to understand the evidence as being so confined. What things does this patented combination consist of? How are they combined, and for what purpose? Allowing the patent to speak for itself, the answer is: Sections of illuminated tile, beams, supporting walls, and cement, so fashioned and joined together, in connection with buildings, sidewalks, and cellars, as to form part of the sidewalks, with a surface conforming to the grade and elevation of other parts thereof, and to afford passages for light into the cellars, while excluding water and other elements. Now, the testimony of Mark and Furman is to the effect that, long prior to the date of this patent, beams or bearers having the peculiarities of shape and length of the bearers described in the above specifications were used in combination and connection with illuminated sidewalk tiles, in a manner and for a purpose exactly the same as set forth in the fourth and fifth claims of this patent. This evidence is not contradicted, and we are constrained by it to hold that, as to the fourth and fifth claims, the patent is void for want of novelty. The additional elements of arranged depressions or cavities in an iron plate on top of the supporting walls to fit the ends of the bearers, as described in the complainant's specifications, is only an equivalent for the stone coping, cut and prepared to fit, previously used in the construction of sidewalks with illuminated tile therein, as shown by said depositions, just as the defendants' method of making a solid structure and tight joints, by filling with cement the space between the beam ends, is an equivalent for the iron plate having depressions, and it does not make the combination a patentable invention. The bill alleges that, in a suit previously brought in the same court by the complainant against persons named, the court rendered a decree by which the validity of this patent became established. But the evidence does not sustain this allegation. It does not appear that any decree or decision was rendered in the case referred to.

The circuit court found as matters of fact and law that all of the patents sued on are valid, and that the defendants have infringed two of them, but the entire amount awarded as damages appears to have been credited to patent No. 263,412. Inasmuch as the answer denies the validity of all the patents, and contains no denial of the charge that the defendants intend to infringe the same, the complainant is entitled to the relief granted by the interlocutory decree, in so far as it affirms the validity of the pat-

ents and enjoins the defendants from infringing the same, in respect to all the claims thereof other than the fourth and fifth claims of patent No. 263,412; and we hold that the complainant is entitled to recover the costs and his disbursements taxed in the circuit court, but he is not entitled to damages.

The decree of the circuit court should be reversed, and the cause remanded, with directions to enter a modified decree in accordance with this opinion, and the appellants are entitled to recover the costs and disbursements taxable on their appeal, and it is so ordered.